Thomson, J.
On the 26th day of April, 1897, the Colorado State Bank of Durango obtained a judgment for #162.10 against M. H. Copeland, before a justice of the peace of La Plata county. On the 28th day of the same month a transcript of the judgment was filed in the district court of the same county. On the 4th day of the following August execution issued upon the judgment, which, upon the 6th day of November, 1897, was returned into the district court, indorsed as follows :
*490 “I, the undersigned, sheriff of said county, do certify that I did duly levy the within execution on lots five (5) and six (6) in block eighty-four (84) in the city of Durango, and that thereafter on, to wit, the 28th day of August, 1897, duly expose the same for sale at public auction at the courthouse door in said city of Durango, when then the same were sold to the plaintiff, the Colorado State Bank at its bid of $175.»
The sheriff also returned the execution satisfied. On the 6th day of August, 1897, Copeland served the following notice upon the sheriff and the bank:
“To the Colorado State Bank, plaintiff in the above entitled cause, and to J. H. Alexander, sheriff of said county:
“ You and each of you will please take notice that lots 5 and 6 in block 84 in the city of Durango, Colorado, are the homestead of the undersigned, duly and legally claimed as such on the records of the county of La Plata, and state of Colorado, and are exempt from seizure under any legal process whatever up to the amount of $2,000, and in the event of sale of said property by virtue of the execution issued in the above entitled cause and the levy made on said property thereunder, the just and full amount of $2,000 must first be paid to the undersigned before title to said property can be transferred to any person by virtue of such sale. Hereof take notice, for the undersigned will enforce his rights to the full extent of the law in such cases made and provided.»
It appears that notwithstanding the notice, the attorney of the bank directed the sheriff to proceed upon the execution. On the 16th day of September, 1897, Copeland commenced his action to annul the proceedings of the sheriff, and to cancel and set aside the certificate of levy and the certificate of sale, and on the 1st day of December, 1897, the court entered a decree adjudging the certificate of levy and the certificate of sale null and void, and quieting the title to the property sold, in Copeland, in so far as it was affected by those certificates.
*491 On the 7th day of December, 1897, the bank filed, in the district court, in the matter of its judgment, its motion to expunge and erase all that portion of the return of the sheriff which showed that its judgment against Copeland had been paid by means of the sale, on the ground that the levy of its execution and the certificate of sale to it, had been adjudged void, and the title to the property, as against it, quieted in Copeland, at his suit. This motion was sustained, and from the order sustaining it, Copeland has prosecuted error to this court.
The theory on which Copeland relies to secure a reversal of the order, is, that as the bank was the purchaser at a sale on execution, the maxim caveat emptor applies; the bank made the purchase at its own risk; and its bid, having been accepted, operated as an unconditional satisfaction of its judgment. We do not think that the rule has any applicability to the ease at bar.
At an execution sale, the proceedings in connection with which have been regular and valid, the purchaser takes whatever title or interest the execution defendant may have; and it is of the defects in that title that he assumes the risk. If the defendant has good title, the purchaser gets it; if a partial title, he gets that; or, if no title, he gets nothing: but he takes his chances on the title the defendant has, and if that proves worthless, he is without remedy. It behooves him to acquaint himself with the title before purchasing; and his complaint afterwards that it was unsatisfactory, will not be heeded. The foregoing is as full a statement of the doctrine of caveat emptor as the case before us renders necessary. Rodgers v. Smith, 2 Ind. 526; Holtzinger v. Edwards, 5 Ia. 383; Bassett v. Lockard, 60 Ill. 164; Boggs v. Hargrave, 16 Cal. 560.
But here, the bank did not take the execution defendant’s title, and it is not of defects in that title that he complains. For aught that appears the defendant’s title was good; but whether it was good or bad, it did not pass to the bank. Our statute provides that every householder in the state, be *492 ing the head of the family, shall,-by causing the word “ homestead ” to be entered of record on the margin of his recorded title be entitled to a homestead, not exceeding $2,000 in value, exempt from execution; and that any creditor who is of the opinion that it is worth more than $2,000, may, by filing an affidavit to that effect with the clerk of the district court, proceed against it as in ordinary cases ; and if it sells for more than $2,000, that sum shall be paid to the owner, and the excess to the creditor; but if not, the title of the owner remains unimpaired. Gen. Stat. secs. 1631,1632,1637.
It appears that the land the bank attempted to sell, had, prior to the filing of the transcript of the judgment, been properly designated by the judgment debtor as a homestead, and that he was a householder and the head of a family. No affidavit was filed in behalf of the bank that the property was worth more than $2,000, and the sum bid for it was much less than $2,000. Up to a value of $2,000, it was exempt from execution, and whatever its value, no levy could lawfully be made upon it without the previous filing of the affidavit. The levy of this execution was therefore void. , The subsequent proceedings depended for their validity upon the levy, and as it was void, so were they. There was, in law, no levy, no sale, and no satisfaction. The proceeding by Copeland to avoid the levy and sale, and quiet the title in him, was unnecessary. Those were not voidable merely, but absolutely void; and their invalidity could be shown in any proceeding at any time. Although the return of satisfaction was also void, yet while it remained, the bank might be unable to procure the issuance of another execution; and it was therefore proper that the return should be canceled.
The maxim, caveat emptor, contemplates a valid sale. It charges the purchaser with knowledge of'faults or defects in the subject of his purchase; but it does not apply to a case where the sale itself was void, and there was, consequently, no purchase.
Let the order be affirmed.

Affirmed.